UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM RYAN JOBES, | |
| Plaintiff, | Case No. 15-cv-4481 |
| v. | Judge John Robert Blakey |
| SALVADOR GODINEZ et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adam Ryan Jobes, an inmate at Stateville Correctional Center, sued seven officers at Stateville under 42 U.S.C. § 1983 for the lack of drinking water in his cell for 86 days. [23]. Plaintiff also sued Officer Bidwell for allegedly retaliating against him after Plaintiff filed this suit. *Id.* Plaintiff claims that Defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to Plaintiff's access to drinking water in his cell. *Id.* Defendants moved for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies and cannot show that his claims meet the objective prong of an Eighth Amendment deliberate indifference claim. [76]. For the reasons explained below, this Court denies Defendants' motion.

### I. Background

#### A. Local Rule 56.1

The following facts come primarily from Defendants' Local Rule 56.1 statement of undisputed material facts. [78]. Plaintiff initially did not file a

1

statement of additional facts or directly respond to Defendants' statement, though he did file a response brief to Defendants' motion, [86], to which he attached various exhibits. Defendants thus asked this Court to deem all the facts in their Local Rule 56.1 statement admitted based upon Plaintiff's failure to respond. [94] at 2–3. But in open court on July 17, 2018, this Court granted Plaintiff's unopposed motion to amend his previous submissions, [96]. Thus, this Court now considers Plaintiff's amended response to Defendants' Motion for Summary Judgment, [96-1], although this corrected version still presents significant deficiencies under Local Rule 56.1.

This Court has "broad discretion" to enforce the local rules governing summary judgment motions. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *see also Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). Those rules demand that the non-moving party respond to the moving party's statements of fact with "specific references" to record evidence to justify any denial. Local R. 56.1(b)(3); *see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Where a party fails to properly respond to the moving party's statement, courts deem admitted the "uncontroverted" portions of the moving party's statements of fact. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

That said, the local rules serve to assist courts "in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). Accordingly, and in the interests of justice and efficiency, courts may exercise their discretion "in the direction of leniency." *Aberman v. Bd. of Educ. of City of Chi.*, 242

2

F. Supp. 3d 672, 677 (N.D. Ill. 2017) (citing *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013)). Nor must a court faced with inadequate responses "turn a blind eye" to facts available elsewhere in the record. *Farmer v. DirectSat USA, LLC*, No. 08-c-3962, 2010 WL 3927640, at *2 (N.D. Ill. Oct. 3, 2010) (quoting *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)).

Here, Plaintiff's amended response, [96-1], appears respond to the numbered paragraphs in Defendants' motion for summary judgment, [76], rather than to the numbered paragraphs in Defendants' Local 56.1 statement of undisputed material facts, [78]. Thus, Plaintiff still fails to respond to Defendants' statement of facts in compliance with Local Rule 56.1. Plaintiff's amended response also contains four paragraphs offering statements of additional fact, all of which were available in the record prior to July 17, 2018 through the exhibits that Plaintiff attached to his original memorandum of law. *Id.*

In light of the above, this Court deems all of Defendants' statements of fact admitted except for paragraphs 13, 35, and 36. With respect to those paragraphs, Plaintiff's exhibits provide admissible evidence that contradicts Defendants' statements of fact, regardless of the formal deficiencies of Plaintiff's Local Rule 56.1 statements. Specifically, Plaintiff's deposition testimony conflicts with the Stateville Dietary Manager's testimony that inmates received a beverage with each of their three daily meals. *Compare* [78-2] at 17–18, *with* [78] ¶ 13. And Plaintiff's affidavit and deposition contradict Defendants' statements that Plaintiff did not file any grievances regarding his lack of drinking water or Bidwell's alleged retaliation.

3

*Compare* [86-1] and [78-2] at 40, *with* [78] ¶¶ 35, 36. At this stage, this Court exercises its discretion to consider Plaintiff's testimony. *See Aberman*, 242 F. Supp. 3d at 677; *Farmer*, 2010 WL 3927640, at *2.

B. **Access to Running Water**

For the period relevant to his claim, Plaintiff was incarcerated at the Stateville Correctional Center in Crest Hill, Illinois. [78] ¶ 1. On August 18, 2014, Plaintiff was assigned to a new cell that lacked running water. *Id.* ¶ 6. Stateville did not fix the water in Plaintiff's cell until November 11, 2014. *Id.* ¶ 7.

Quentin Tanner, the Dietary Manager at Stateville, testified that during that period Plaintiff had access to beverages such as milk, juice, or water at each of the three meals a day served to inmates in their cells. [78-4]. Plaintiff testified that he never skipped a meal while at Stateville but also stated that he did not receive a beverage with his meals during this period. [78-2] at 17–18.

At all relevant times, Plaintiff could purchase water from the prison commissary. [78] ¶ 16. Plaintiff did this at least once during the 86 days he lacked running water in his cell. *Id.* ¶ 18. On some occasions, Plaintiff also received water from the inmate in the cell next to him. *Id.* ¶ 17. Plaintiff alleges that the longest he went without any type of beverage during the time he lacked running water in his cell was four days. *Id.* ¶ 8.

C. **Bidwell's Alleged Retaliation**

Plaintiff claims that Bidwell, a Stateville corrections officer, retaliated against him after he filed this suit in May 2015. *See* [1]; [23] ¶¶ 40–47. In support

of that claim, Plaintiff points to a grievance he filed on October 29, 2015 in which he alleged that correctional officers denied him access to the law library by claiming that the law librarian had quit and no one could fill in for her. [86-2].[1] Plaintiff did not expressly name Bidwell in this grievance. *See id.*

Plaintiff also testified that Bidwell would open the windows in Plaintiff's area to let in freezing air, and would tell the other inmates that he was doing it because of Plaintiff's lawsuit. *See* [78-2] at 53–54. Plaintiff filed a grievance on November 28, 2015 about Bidwell's conduct, which he stated began around mid-November. [86-3]. In the grievance form, Plaintiff claimed that he asked other officers to shut the windows because of the cold weather and they said they could not because they had direct orders from Bidwell to leave them open. [86-3] at 2. Plaintiff claimed that the cold air from the open windows made him ill and he refused to visit the nurse so as to avoid seeing Bidwell. *Id.* at 3. He wrote that he feared he would be placed with gang members who had previously threatened to kill and rape him in further retaliation. *Id.*

Plaintiff further testified in his deposition that in 2015 or 2016, while he was in protective custody as a result of threats made by Gangster Disciple (GD) gang members, he ended up in a cell with a GD member. [78-2] at 54. He did not state that Bidwell was personally responsible for this incident. *See id.* Plaintiff also

---

[1] When this Court granted Plaintiff's motion for leave to file an amended response to Defendants' summary judgment motion, [99], Plaintiff reattached his affidavit and three grievance forms to his amended response. These exhibits had previously been submitted as docket entries [86-1], [86-2], [86-3], and [86-4] respectively, but now also appear in the record as entries [96-2], [96-3], [96-4], and [96-5]. This Court will continue to refer to them in their originally filed form as [86-1], [86-2], [86-3], and [86-4], as the exhibits are identical in both docket entries.

5

testified that in September 2015 another gang member attempted to sexually assault him and said that Bidwell had ordered him to do so. *Id.* Plaintiff filed a third grievance on December 1, 2015 in which he wrote that inmate gang members had been threatening him. [86-4]. He claimed that he had notified a number of corrections officers, who had not responded to him, and that he feared for his life. *Id.* He did not name Bidwell in this grievance. *See id.*

Finally, Plaintiff testified in his deposition that Bidwell threatened to kill him and inflict other bodily harm on him as well. [78-2] at 54.

### D. Grievance Process

The Illinois Department of Corrections (IDOC) has a formal grievance process, which is set out in the inmate handbook that Plaintiff received when he arrived at Stateville. [78] ¶¶ 22–25. Plaintiff claimed that he did not know the contents of the inmate handbook but acknowledged that it describes the grievance process. *See id.* ¶ 24.

According to IDOC's grievance process, an inmate must first speak with his or her counselor about any grievances. *Id.* ¶ 26. If the grievance remains unresolved, the inmate may file a written grievance with the facility's Grievance Officer within 60 days of the incident. *Id.* The Grievance Officer may investigate the matter and recommend relief if appropriate. *Id.* The Grievance Officer's findings are communicated to the Chief Administrative Officer (CAO), who then issues a final decision on the grievance, which is returned to the inmate. *Id.* Inmates can appeal an unfavorable decision to the Administrative Review Board

(ARB). *Id* ¶ 27. The ARB can order a hearing or issue a decision on the matter. *Id.* The ARB then forwards that decision to the Director for review. *Id.* A copy of the final decision is sent to the inmate as well. *Id.* Inmates can also file emergency grievances directly with the CAO for expedited review. *Id.* ¶ 28. If the CAO determines that an emergency situation does not exist, the inmate must resubmit the grievance through the normal process for adjudication. *Id.*

In 2014, an inmate could file grievances about certain issues directly to the ARB rather than through a counselor or Grievance Officer. *Id.* ¶ 29. These issues included the involuntary administration of psychotropic medication, protective custody placements, decisions regarding disciplinary proceedings made at a different facility, and other issues pertaining to facilities other than the one where the inmate currently resided. *Id.* ¶¶ 30–33. ARB handled any grievance addressed to it directly according to its normal procedures. *Id.* ¶ 34.

### 1. Grievance Process for the Lack of Water

Plaintiff stated in his affidavit that he delivered a grievance form to his prison counselor, Ed Butkiewicz, about the lack of running water in his cell after his August 2014 transfer. [86-1]. Plaintiff claimed that Butkiewicz visited his cell two weeks after he submitted the grievance form and, when Plaintiff inquired about the grievance form, Butkiewicz stated that he would address it when he had time. [86-1]. Plaintiff claimed that he never heard back from his counselor or the warden about this grievance and followed up with Butkiewicz two weeks later. *Id.*

Plaintiff testified in his deposition that he filed "ten or more" grievances about the water issue. [78-2] at 40. He claimed that he kept copies of all his grievances and gave "a few" to his attorney. *Id.* at 41. He said that he originally filed the grievances as normal grievances and then began to file them as emergency grievances. *Id.* at 45. Plaintiff claimed in his deposition that for one of these grievances he received a response from the ARB that said, "Forward to Springfield," but he did not recall whether the grievance was denied or not. *Id.*

Defendants contend that Plaintiff did not comply with IDOC's grievance process. [94] at 4–5. Debbie Knauer, Chairperson of the ARB, testified that she searched the ARB's records and could not find any original grievances or appealed grievances filed by Plaintiff related to the lack of drinking water. [78] ¶ 35. Anna McBee, a Grievance Counselor at Stateville, testified that she searched the Stateville records and also could not find any grievances filed by Plaintiff about his lack of drinking water. *Id.* ¶ 36.

### 2. Grievance Process for Retaliation Claim

Plaintiff filed a grievance regarding officers denying him access to the law library on October 29, 2015. [86-2]. He filed another grievance on November 28, 2015, alleging that Bidwell opened windows around his cell and refused to shut them. [86-3]. The grievance also alleged that other officers refused to shut the windows, claiming Bidwell had directed them to keep them open. *Id.* Plaintiff filed a third grievance on December 1, 2015, about the protective custody housing unit officers' failure to help him after he received threats from inmate gang members.

[86-4]. Plaintiff claims that he did not receive a response to any of these grievances. [78-2] at 13.

Defendants note that the October 29 grievance clearly shows that the CAO responded to the grievance denying emergency review. *See* [86-2] (showing CAO's signature at the bottom of the page). The IDOC grievance process requires inmates to resubmit denied emergency grievances through the normal process to adjudicate the claim. [78] ¶ 28. Plaintiff does not offer any evidence that he resubmitted that grievance through the normal process as required by IDOC's grievance procedures.

Defendants note that Plaintiff also marked the November 28, 2015 and the December 1, 2015 grievances as emergency grievances by checking the emergency box at the bottom of the form. *See* [86-3] at 1; [86-4]. Plaintiff does not offer any evidence that he resubmitted these grievances through the normal process.

Plaintiff sued Defendants in May 2015 for the alleged deprivation of water in his cell. [1]. Plaintiff amended his complaint in October 2015. [19]. Plaintiff filed a second amended complaint against Defendants Williams, Weatherspoon, Bailey, Kerr, Beard, Richardson, Hobus, Bidwell, and Godinez in February 2016 for the alleged deprivation of water in his cell and Bidwell's alleged retaliation. [23]. In August 2016, this Court's predecessor granted Defendants' motion to dismiss the claims against Godinez and Williams. [35]. The remaining Defendants moved for summary judgment on both of Plaintiff's claims. [76].

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material

9

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). The non-moving party has the burden of identifying the evidence creating an issue of fact, *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008), by citing "particular materials in the record," *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014). The non-moving party must do more than create "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252. The moving party is entitled to summary judgment where the non-moving party fails to establish an "essential element" of the case for which that party has the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

### III. Analysis

Defendants seek summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform

Act (PLRA), 42 U.S.C. § 1997e *et seq.*, and that Plaintiff's claim challenging his conditions of confinement fails to meet the objective prong of an Eighth Amendment deliberate indifference claim, [77] at 2. Defendants do not seek summary judgment on the merits of Plaintiff's retaliation claim. This Court first addresses Plaintiff's exhaustion of administrative remedies under the PLRA before turning to his deliberate indifference claim.

### A. Failure to Exhaust

Defendants argue that both of Plaintiff's claims are barred because Plaintiff failed to exhaust his administrative remedies. *See* [77] at 5. Under the PLRA, prisoners may not bring suits challenging prison conditions unless they have exhausted all available administrative remedies. *See* § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Exhaustion is mandatory, as is rejection of a prisoner's unexhausted claim. *Woodford*, 548 U.S. at 85. The burden of proving exhaustion lies with Defendants. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)

The PLRA requires "proper exhaustion" of an inmate's claim, which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, to properly exhaust his claims, Plaintiff must have complied with all "deadlines and other critical procedural rules." *Id.* That includes filing all "complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. An untimely appeal, or a failure to appeal, thus constitutes a failure to exhaust and results in dismissal

11

of the plaintiff's claim. *See id.*; *see also Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005). An exception applies, however, when prison officials make a grievance process "practically impossible" to pursue. *King v. McCarty*, 781 F.3d 889, 895 (7th Cir. 2015); *see also Dole*, 438 F.3d at 809–10; *Drew v. Ramos*, No. 11-cv-2938, 2013 WL 5212343, at *6 (N.D. Ill. Sept. 17, 2013) (collecting cases). A prison's failure to respond to a grievance can render an administrative remedy unavailable and excuse exhaustion. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005).

### 1. Grievances for Lack of Running Water

Plaintiff claims that he merits the exception to exhaustion regarding the lack of water in his cell because he filed "ten or more" grievances on that issue and never received a response. [78-2] at 44. He attested that he gave a grievance form to Butkiewicz—his counselor—and followed up with him when he did not hear back. [86-1]. Despite following up, Plaintiff claims he never received a response. [78-2] at 44. Defendants offer evidence that Knauer, Chairperson of the ARB, and McBee, a Stateville Grievance Officer, searched the grievance logs and databases maintained by their respective institutions and did not find any grievances filed by Plaintiff about his lack of water. [78-7] at 2; [78-6] at 2–3. Defendants note that Plaintiff does not offer any evidence that he filed grievances related to his lack of water claim besides a "self-serving affidavit." [94] at 4–5. But such affidavits constitute admissible evidence and can create an issue of material fact that precludes summary judgment. *See, e.g.*, *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

Here, Plaintiff's affidavit provides evidence that he filed grievances about the lack of water in his cell and never received any responses, [86-1] at 2; [78-2] at 44, which may excuse Plaintiff's failure to exhaust his administrative remedies, *see Brengettcy*, 423 F.3d at 682. In light of Defendants' contrary evidence showing that Plaintiff knew about the proper grievance procedures and failed to follow them, *see* [78-2] at 12–13; [78-7] at 2; [78-6] at 2–3, the record contains genuine issues of material fact as to whether Plaintiff complied with—or merits an exception to—the PLRA's exhaustion requirement. Thus, this Court denies summary judgment on the grounds that Plaintiff failed to exhaust his remedies as to his deliberate indifference claim related to the lack of running water in his cell.

### 2. Grievances for Alleged Retaliation

Plaintiff also claims that he merits the exception to the exhaustion requirement for his retaliation claim, because he filed three emergency grievance forms and did not receive a response to any of them. [96-6] at 2. Defendants contend that Plaintiff did not comply with the PLRA's exhaustion requirement because Plaintiff did not pursue these denied emergency grievances by resubmitting them through the normal process. [94] at 5.

The record contains three grievance forms relating to Bidwell's alleged retaliation. [86-2]; [86-3]; [86-4]. The grievance dated October 29, 2015 indicates that the CAO denied it as an erroneously labeled emergency grievance. [86-2]. Defendants do not offer evidence showing that Plaintiff received a copy of the CAO's response. The other two grievances—also marked as emergency grievances—from

13

November 28, 2015 and December 1, 2015 do not indicate whether they were adjudicated or whether Plaintiff received a response. [86-3]; [86-4].

The grievance dated October 29, 2015—addressing Plaintiff's inability to access the law library—reflects that the CAO denied emergency review but does not indicate whether Plaintiff received a copy of this determination or any other response. [86-2]. The other two grievances contain no indication as to whether they were adjudicated, and if so, whether any response reached Plaintiff. *See* [86-3]; [86-4]. Again, the record contains the conflicting testimony of Stateville officials who note that they found no record of any properly submitted grievance from Plaintiff regarding retaliation, [78-7] at 2; [78-6] at 2–3, and Plaintiff's testimony that he submitted various grievances for which he never received a response, [78-2] at 13.[2]

Because a prison's failure to respond to a grievance can render an administrative remedy unavailable and excuse exhaustion, *Brengettcy,* 423 F.3d at 682, these conflicting accounts present a genuine issue of material fact. On this record, Defendants fail to satisfy their burden of proving that Plaintiff inexcusably failed to exhaust his remedies. This Court therefore denies summary judgment on

---

[2] When this Court granted Plaintiff's motion to amend his submissions, the Court also granted Defendants' unopposed motion for leave to file a supplemental declaration. *See* [95, 99]. Defendants offered this declaration to address the grievance forms that Plaintiff attached to his initial response brief, which Defendant stated had not been previously disclosed. [95] at 1. Defendants' supplemental declaration contains McBee's statement that Plaintiff filed additional emergency grievances about his retaliation claims, which were also denied emergency review and returned to Plaintiff. [95-1] ¶ 13. McBee states that there is no record in the Stateville grievance log that Plaintiff resubmitted these grievances through the normal process and, therefore, Plaintiff failed to exhaust his administrative remedies. *Id.* ¶ 14. But Plaintiff testified that he never received a response to these grievances, which continues to present a genuine issue of material fact. [96-6] at 2. Therefore, this Court's analysis remains unchanged, and genuine issues of material fact still require this Court to deny summary judgment on Plaintiff's retaliation claims on the grounds that Plaintiff failed to exhaust his remedies.

14

the grounds that Plaintiff failed to exhaust his remedies as to Plaintiff's retaliation claim against Bidwell.

### B. Lack of Running Water

Plaintiff contends that Defendants violated his Eighth Amendment rights when they deprived him of running water in his cell for 86 days. [23] ¶ 36. To prevail, Plaintiff must show that Defendants demonstrated deliberate indifference to Plaintiff's lack of running water in his cell. *Hernandez v. Battaglia,* 673 F. Supp. 2d 673, 676 (N.D. Ill. Dec. 14, 2009). This requires Plaintiff to establish that: "(1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (internal quotation marks omitted) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

To satisfy the first, objective prong, Plaintiff must show that the "totality of the circumstances" equated to a denial of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 362 (1981); *see also Gray,* 826 F.3d at 1005. Access to drinking water clearly qualifies as a life necessity. *See, e.g.*, *Davis v. Biller*, No. 00-c-50261, 2003 WL 22764872, at *2 (N.D. Ill. Nov. 18, 2003); *Dillard v. Washington*, No. 96-c-698, 1998 WL 142360, at *3 (N.D. Ill. Mar. 20, 1998); *see also Woods v. Thieret*, 903 F.2d 1080, 1082 (7th Cir. 1990) (finding that failing to provide an inmate food for three days could support an Eighth Amendment challenge and noting that prisons must "provide inmates with a minima of food, shelter and basic necessities"). That said,

15

the lack of running water in a prisoner's cell does not necessarily constitute a constitutional violation where drinking water remains available to the inmate through other means. *See Mims v. Hardy*, No. 11-c-6794, 2013 WL 2451149, at *9 (N.D. Ill. June 5, 2013) (holding that the plaintiff's lack of running water in his cell was not a constitutional violation because he had access to water through the commissary, a hose, refillable water bottles, and beverages with his daily meals); *see also Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998) (holding that a handicapped inmate's difficulty accessing the drinking water in his cell was not a constitutional violation, in part because he received beverages with his meals).

On the other hand, the objective prong requires that courts consider not only the severity of the condition but also its duration. *See Dixon v. Godinez,* 114 F.3d 640, 643 (7th Cir. 1997). Thus, Courts in this district have found that the lack of water in a prison cell can rise to a constitutional violation when the condition endures for a significant period of time. *See Williams v. Collins*, No. 14-c-5275, 2015 WL 4572311, at *4 (N.D. Ill. July 29, 2015) (holding that 16 days without running water satisfies the test's objective prong); *Jones v. Dart,* No. 14-c-3208, 2015 WL 500532, at *5 (N.D. Ill. Feb. 4, 2015) (holding that 34 days without running water satisfies the test's objective prong).

Here, Plaintiff alleges that he did not have running water in his cell for 86 days. [23] ¶ 36. While Plaintiff admits that he received water from his neighbor and bought water at least once at the commissary, he asserts that he did not receive a beverage with his meals during those 86 days. [78-2] at 17–18. Defendants

contend that Plaintiff had access to a beverage at every meal during those 86 days. [78] ¶ 13. Based upon this record, genuine issues of fact exists as to whether Plaintiff had regular access to water at his daily meals and thus whether, considering all the circumstances, Defendants denied Plaintiff a life necessity. *See Gray*, 826 F.3d at 1005. Accordingly, this Court denies summary judgment on Plaintiff's deliberate indifference claim. *See Anderson*, 477 U.S. at 248.

## IV. Conclusion

For the reasons explained above, this Court denies Defendants' motion for summary judgment. [76].

Dated: July 19, 2018

Entered:

_____
John Robert Blakey
United States District Judge